# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

MONIQUE ZORDAN,

           Plaintiff,

- against -

THE TRAVELER'S HOME AND MARINE INSURANCE COMPANY, THE TRAVELER'S COMPANIES, INC,

           Defendants.

Index No.: 654848/2017

**STIPULATION**

WHEREAS, in this insurance coverage dispute, defendants herein represent that i) the insurance policy at issue was issued only by The Travelers Home and Marine Insurance Company (s/h/a "The Traveler's Home and Marine Insurance Company"), no. 994056178 634 1, and ii) that The Travelers Companies, Inc. (s/h/a "The Traveler's Companies, Inc.") does not issue insurance policies and, hence, did not issue any insurance policy relevant or potentially relevant hereto; and

WHEREAS, plaintiff has requested that counsel for The Travelers Home and Marine Insurance Company accept service of the summons and complaint on behalf of said entity;

IT IS HEREBY STIPULATED AND AGREED, as follows:

    a.    Lazare Potter Giacovas & Moyle LLP hereby accepts service of the summons and complaint herein on behalf of The Travelers Home and Marine Insurance Company, which service shall be deemed to have been formally effected upon said entity as of the date hereof;

    b.    Plaintiff hereby voluntarily discontinues without prejudice any and all claims, allegations and demands for relief against the party sued herein as "The Traveler's Companies, Inc." and, hence, the complaint herein shall be deemed amended accordingly;

c. The caption of this case is hereby amended to read as follows:

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

MONIQUE ZORDAN,

Plaintiff,

- against -

THE TRAVELERS HOME AND MARINE
INSURANCE COMPANY,

Defendant.

d. The Travelers Home and Marine Insurance Company shall have to and including September 5, 2017 to respond to the complaint herein.

Dated: New York, New York
August 5, 2017

| THE LANDAU GROUP, PC | LAZARE POTTER GIACOVAS & MOYLE LLP |
|---|---|
| By: /s/ Kevin A. Landau<br>45 Rockefeller Plaza, Suite 2000<br>New York, New York   10111<br>(212) 537-4025<br>Attorneys for Plaintiff | By: /s/ Stephen Lazare<br>875 Third Avenue, 28th floor<br>New York, New York 10022<br>(212) 758-9300<br>Attorneys for Defendants |

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY
------------------------------------------------------------------X

MONIQUE ZORDAN,

    Plaintiff,              **SUMMONS**

                     Index No. _____

  - against -

THE TRAVELER'S HOME AND MARINE      Plaintiff Designates
INSURANCE COMPANY, THE TRAVELER'S     New York County as
COMPANIES, INC.,                Place of Trial

    Defendants.
------------------------------------------------------------------X

YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with the summons, to serve a notice of appearance of the day of service. If this summons is not personally served upon you, or if this summons is served upon you outside of the State of New York, then your answer or notice of appearance must be served within thirty (30) days. In case of your failure to appear or answer, judgment will be taken against you by default, for the relief demanded in the complaint.

  The basis of venue is CPLR 503.

Dated: July 17, 2017
New York, New York

                 Respectfully submitted,

                 THE LANDAU GROUP, PC

                 _____
                 Kevin A. Landau
                 45 Rockefeller Plaza, Suite 2000
                 New York, New York 10111
                 212.537.4025
                 kevin@thelandaugroup.com

                 *Attorneys for Monique Zordan*

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY
------------------------------------------------------------------X
MONIQUE ZORDAN,

        Plaintiff,

- against -

THE TRAVELER'S HOME AND MARINE
INSURANCE COMPANY, THE TRAVELER'S
COMPANIES, INC.,

        Defendants.
------------------------------------------------------------------X

**COMPLAINT AND JURY DEMAND**

Index No. _____

Plaintiff Designates
New York County as
Place of Trial

Plaintiff Monique Zordan ("Plaintiff" or "Ms. Zordan") by and through her undersigned attorneys, the Landau Group, PC, as and for her complaint against Defendants The Traveler's Home and Marine Insurance Company and The Traveler's Companies, Inc., ("Defendant" or "Traveler's"), alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff Monique Zordan is an individual residing in New York, New York.

2. Defendants The Traveler's Home and Marine Insurance Company and The Traveler's Companies, Inc., are corporations, with a principal place of business in New York, New York.

3. Venue is proper in this Court pursuant to CPLR 503 based on Plaintiff's residence, and where Defendant maintains its office.

4. Jurisdiction is proper in this Court pursuant to CPLR 301

### STATEMENT OF FACTS

5. Plaintiff is a tenant, occupying a rental unit in the 75 Wall Street building, located in the financial district of Manhattan.

1

6. Plaintiff has lived in said building since 2011, and has a personal property insurance policy, insuring all personal property owned or used by her, while it is anywhere in the world.

7. Plaintiff's insurance policy costs her over $1,000.00 a year, and was obtained by her, solely to insure her personal property, in the event of loss or damage.

8. On or about February 7, 2017, Plaintiff came home, and to her utter horror discovered, what she believed to be, clothes moths, which had infested her apartment, laid their eggs, and eaten through 2 couches, areas rugs, and a substantial amount of very expensive clothes, accessories, rugs and so forth.

9. After discovering the moths' invasion, Plaintiff immediately notified her building front desk, which sent an exterminator to Plaintiff's apartment on or about February 10, 2017.

10. Plaintiff was provided moth traps, and thoroughly cleaned and disinfected her apartment.

11. As she cleaned her apartment, she discovered numerous adult moths jumping all over her area rug, and she quickly made the decision to roll the rug up and get it out of the unit, whereupon she found a major hole within the rug, and then proceeded to throw out every single area rug in her apartment, since they were each determined to be infested.

12. Upon further inspection into her bedroom, and closets, she discovered not only numerous adult moths, but what she believed to be larvae and cocoon like nests on her very expensive and precious clothing.

13. Subsequently, Plaintiff laid additional traps, and many of the adult moths were apparent, especially under the couch, where webbing and cocoon like nests were present. In addition, Plaintiff poured hot water all over the fabric, whereupon even more larvae and adult moths were present.

14. Plaintiff's entire apartment was compromised as a result of the foregoing, and she was forced to uproot her entire life for several weeks thereafter.

15. The exterminator that Plaintiff hired soon after discovering the moth infestation, as she was trying to find a solution, informed her that the situation was beyond his control and ALL of her belongings would have to be removed from her unit, and taken to an indoor fumigation unit, gassed (not once, but twice), to assure that no more larvae remained. Plaintiff was also informed that the exterminator would need to gas her entire unit, thereby further displacing her, for several weeks to allow time for completion of the process.

16. The fumigation process, the associated storage and moving expenses, and providing Plaintiff with a place to live while it is completed, are substantial expenses, but are required to remediate Plaintiff's apartment, so it is safe and healthy for her to live there, and so further damage from the moth infestation to her personal property is diminished.

17. Plaintiff is an actress and model and possessed a great deal of unique and expensive clothing, which was substantially damaged. Further, during fashion week, in order to deal with the infestation, she was forced to take up residency at hotels, and to have her team of hair, makeup, and wardrobe prepare her for events, and to keep them safe and healthy, because her apartment could not be occupied.

18. Moreover, Plaintiff was expected to attend the Oscars around this time, however did not feel comfortable leaving her valuables and clothing susceptible to further damage.

19. Therefore, within weeks of discovering the moths, Plaintiff had already incurred tens of thousands of dollars in damages trying to mitigate her losses, and the costs kept piling up.

20. On or about May 22, 2017, Plaintiff reported the claim to her insurance adjuster, and notified him of the foregoing.

3

21. Instead of resolving the claim, and limiting further damages thereto, or providing Plaintiff with any help or support whatsoever, Plaintiff's insurance adjuster summarily denied her claim a couple days after she reported it. Absolutely no investigation was done by the insurance company in regards to Plaintiff's claim; no exterminator was sent to Plaintiff's apartment, nor anyone else from the insurance company, to assess the situation or to determine the extent of Plaintiff's damages, and the causes, and applicable coverage, thereto.

22. Mr. Fischetti, from Traveler's, was assigned to Plaintiff's claim, and denied Plaintiff's claim, based on the following:

"I am following up on our recent conversation about your claim. As we discussed, after researching this claim, The Travelers Home And Marine Insurance Company determined that your policy does not cover damages from insect infestation. The reasons for this determination are outlined below. You presented a claim for damages to your personal property. Our research found these damages were caused by a moth infestation. Since the damages to your property were caused by insects and insect damage is not a covered peril, your policy does not provide coverage. As a reference, I have provided the following section of your policy, (HO-4(12-86)), which explains that this type of loss is not covered:"

23. Thereafter, in this letter, Mr. Fischetti proceeded to copy and paste 2 ½, cherry-picked, pages from Plaintiff's insurance policy relative to property being covered under said policy against perils, such as: fire, lighting, windstorm, hail, explosion, riot, aircraft and self-propelled missiles, theft and falling objects. Plaintiff's policy even states directly under that: "These perils apply to covered building and personal property for loss insured by this **additional coverage**" (emphasis added).

24. Every homeowner's policy that Traveler's offers – aside from the most basic one - provides full coverage against all perils. Mr. Fischetti's representation that Plaintiff's policy only provided coverage against perils is utterly ridiculous, and has no basis in fact.

25. According to Traveler's own website:

"Personal property insurance coverage can cover your belongings, such as furniture, clothing, sporting goods or electronics, in the event of a covered loss – whether they get damaged at your home or apartment, or anywhere in the world." See URL: https://www.travelers.com/home-insurance/coverage/personal-property

Further, according to Traveler's website:

"Travelers offers an optional coverage — personal property replacement cost loss settlement — that provides for settlement of covered personal property losses based on replacement cost at the time of loss, with no deduction for depreciation. When purchasing your homeowners policy, you'll need to decide whether you want the actual cash value personal property coverage generally included in a homeowners policy or the optional replacement cost coverage. Both are subject to applicable policy limits and deductibles."

Moreover, Traveler's indicates on their website that: What May Not Be Covered

"certain damage is not covered by homeowner's insurance as the policy contains terms, conditions and exclusions. For example, if your property is damaged in an earthquake, the damage is typically not covered unless you have purchased earthquake coverage. Similarly, damage from a flood is not covered unless you have purchased a separate flood policy."

26. Plaintiff purchased personal property insurance to cover her belongings such as furniture, and clothing, and purchased the optional coverage for personal property replacement costs.

27. Under Plaintiff's policy property damaged in an earthquake is specifically excluded, as is water damage, war and nuclear hazard.

28. However, none of the provisions cited by Mr. Fischetti, specifically excludes coverage from loss or damage caused by moths or insect infestation.

29. Notwithstanding the foregoing, Mr. Fischetti concluded his denial letter as follows:

"This decision is based on the information and documentation we received during our research of this claim. If you are aware of any new or different information or documentation that might lead us to reconsider our decision, please contact me immediately. Your policy may have other terms, conditions and exclusions that apply to this claim. We do not waive any rights, including our right to deny coverage, for any other valid reason under the policy or at law."

30. This is patently absurd and in utterly bad faith.

5

31. Defendant did not perform any investigation relative to Plaintiff's claim, and did not receive any documentation from Plaintiff; the only thing that was exchanged was a brief phone call between Plaintiff's counsel and Mr. Fischetti. A couple days after this phone call, Mr. Fischetti summarily denied Plaintiff's claim.

32. However, in denying said claim, Mr. Fischetti, absurdly and ambiguously, stated that Plaintiff's "policy may have other terms, conditions and exclusions that apply to this claim."

33. Plaintiff is not a lawyer, or an insurance adjuster, and she was insured with Traveler's for years before the incident, without having ever made a claim for any loss.

34. Mr. Fischetti's denial was in bad faith, and he deliberately failed to place the interests of Plaintiff on equal footing, with the interests of Traveler's own interests.

35. In the mean time, Plaintiff had already expended tens of thousands of dollars attempting to mitigate her damages, and further damage could have been substantially limited or prevented with assistance from Traveler's, however, Traveler's refused to conduct any investigation, and summarily denied Plaintiff's claim, yet even in denying said claim, Traveler's actually acknowledged that the: "policy may have other terms, conditions and exclusions that apply to this claim."

36. It is not, nor has it ever been, the insured's responsibility to figure out an ambiguity in an insurance policy, that was created by the insurance company.

37. The language used in the exclusion clause cited by Mr. Fischetti in his denial letter, is solely concerned with coverage after loss or damage resulting from a peril, such as: a fire or a riot.

38. It has no application whatsoever relative to Plaintiff's coverage for loss or damage to her personal property from moths, insects, or insect infestation; and other terms, conditions, and

6

exclusions, within Plaintiff's policy may apply to her claim, or may not apply to her claim. Her policy is over 50 pages long, And the policy jacket, and declarations page provided by the insurance company is an additional 20 pages, which further demonstrates that she had substantial coverage for her personal property.

39. Insurance contracts are incredibly complex and complicated agreements, containing ambiguities, therefore, if any ambiguity appears in the meaning of an exclusion clause, the ambiguity was created by defendant and must be resolved in favor of the insured. The principle that the exclusion clause will be strictly construed against the insurer requires a determination in Plaintiff's favor.

40. The entire purpose of Ms. Zordan – a tenant in a high-rise luxury apartment building in Manhattan - obtaining and paying for an expensive personal property insurance policy, is so she would have insurance coverage over her personal property within her apartment, or under the language of the policy: "anywhere in the world." The first line under the coverage she is entitled to, states as follows:

"SECTION I – COVERAGES COVERAGE C • PERSONAL PROPERTY"

- "We cover personal property owned or used by any insured while it is anywhere in the world."

41. Mr. Zordan's policy insured to total limits of $500,000.00 all: "personal property owned or used by any insured while it is anywhere in the world." "In addition, we will cover at your request, personal property owned by a guest or a residence employee, while the property is in any residence occupied by any insured."

42. Ms. Zordan's policy contain zero (0) specific exclusions relative to her personal property not being covered due to moths, or an insect infestation, nor could, or did, Mr. Fischetti point to one, in summarily denying Ms. Zordan's claim.

7

43. Traveler's headquarters is in Manhattan, and they are the second largest writer of commercial property casualty insurance in the country. Therefore, as the insurer of household furnishings and clothing, they are presumed to have been acquainted with the risks.

44. The risk of damage by moths is well known to New Yorkers, and said risk, presumably is well known to the insurer Traveler's, and could have been specifically excluded, as for example, Traveler's could have stated in the policy that: "damage or loss caused by" moths" or "insect infestation" is excluded from coverage".

45. There is no specific exclusion contained in Ms. Zordan's policy, and therefore, her personal property is covered, and must be replaced under said policy. Ms. Zordan purchased additional coverage for replacement costs of her personal property, and therefore, she is entitled to the replacement costs of her personal property under her policy.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT
### (Against Defendants' Traveler's)

46. Plaintiff repeats, repleads and incorporates by reference each and every allegation of paragraphs 1 through 45 of this Complaint as though set forth in full herein.

47. As set forth more fully above, Plaintiff had a written contract with Defendants.

48. Plaintiff performed under the contract.

49. Defendants' breached their obligations under said contract as outlined above.

50. Plaintiff suffered, and continues to suffer substantial damages because of Defendants' breach.

WHEREFORE, Plaintiff respectfully requests actual and compensatory damages of $500,000.00, plus costs, interest, and attorneys' fees; and for such other relief that the Court deems just and proper.

8

Case 1:17-cv-06121-AT   Document 1-1   Filed 08/14/17   Page 13 of 16
FILED: NEW YORK COUNTY CLERK 07/17/2017 06:03 PM
NYSCEF DOC. NO. 1

INDEX NO. 654848/2017
RECEIVED NYSCEF: 07/17/2017

## SECOND CAUSE OF ACTION
## DECEPTIVE BUSINESS PRACTICES (GENERAL OBLIGATIONS LAW § 349)
### (Against Defendants Traveler's)

51. Plaintiff repeats, repleads and incorporates by reference each and every allegation of paragraphs 1 through 50 of this Complaint as though set forth in full herein.

52. As set forth more fully above, Traveler's engages in dilatory and fraudulent practices as a general policy.

53. As in this case, Traveler's summarily denies its insureds personal property claims, without conducting an appropriate investigation into the claim, or without conducting any investigation whatsoever (such as here).

54. As in this case, Traveler's routinely denies personal property claims and coverage, oftentimes, within a couple days after the claim is reported. Said denials are usually based on Traveler's pointing to an inapplicable section of the insured's policy in its denial letter, as a justification for the denial, and to give the appearance that the denial is appropriate, when it is not, and when the section cited by Traveler's is not applicable to the claim submitted.

55. As in this case, Traveler's will often deny an insured's claim based upon representing that an investigation has been conducted into the claim, when in fact no investigation has been conducted, and instead, the claim is summarily denied as a matter of course and policy.

56. The foregoing is a common claims settlement practice by Traveler's, and done so that most of their insureds will not take any further action on their personal property claims, and so Traveler's is not required to spend any money investigating the personal property claim at issue, or having to pay their insureds on those claims.

57. These practices are part of Traveler's usual and customary business and claims settlement practices relative to personal property claims, and constitute a deceptive act or practice that is

9

consumer oriented, and has a broad impact on consumers at large, namely, consumers who are insured under Traveler's personal property insurance policy, who submit a claim for personal property insurance coverage.

WHEREFORE, Plaintiff respectfully requests the following relief:

a. That Traveler's its agents, employees, contractors, owners, and directors, be permanently enjoined from engaging in such deceptive acts and practices relative to its claims practices for personal property insurance claims;

b. That the Court award actual damages to Plaintiff in an amount of $500,000.00;

c. That the Court treble Plaintiff's damage award; and

d. That the Court award Plaintiff statutory attorneys' fees, costs, and interest.

### THIRD CAUSE OF ACTION
### BAD FAITH
### (Against Defendants Traveler's)

58. Plaintiff repeats, repleads and incorporates by reference each and every allegation of paragraphs 1 through 57 of this Complaint as though set forth in full herein.

59. As set forth more fully above, Traveler's unreasonably denied Plaintiff's claim, and deliberately or recklessly failed to place the interests of Plaintiff on equal footing, with the interests of Traveler's own interests.

60. Traveler's failed to conduct any investigation into Plaintiff's claim, much less a reasonable one, and instead summarily denied Plaintiff's claim a couple days after it was submitted.

61. Mr. Fischetti's denial letter was unfounded, and based on deceiving Plaintiff, and exercising an unfair advantage over her to pressure her, and place her on an unequal footing,

10

whereby the only other options she had left, were to give up, or retain private counsel, and proceed to court.

62. In the interim, Plaintiff expended tens of thousands of dollars attempting to mitigate her damages, and further damage could have been substantially limited or prevented with assistance from Traveler's, however, Traveler's refused to conduct any investigation, and summarily denied Plaintiff's claim, yet even in denying said claim, Traveler's actually acknowledged that the: "policy may have other terms, conditions and exclusions that apply to this claim."

63. Traveler's was notified by Plaintiff's counsel, within days of their denial letter, other terms and conditions did in fact apply to Plaintiff's claim; that their denial did not apply to the cause of Plaintiff's damage, and that they were encouraged to reconsider or to specifically address the applicable exclusion, and that the failure to do so would necessitate an additional claim for bad faith.

64. Traveler's again refused to conduct any investigation, and again summarily denied Plaintiff's claim, within days, and without any reconsideration.

65. As demonstrated more fully above, Traveler's conduct in this case was sufficiently egregious, and is part of a pattern of similar conduct directed at the public generally, as to warrant punitive damages. Further, said conduct involves more than just a breach of contract, and evidences a fraud involving a high degree of moral turpitude and demonstrating a wanton dishonesty as to their civil obligations, and responsibilities to their insureds, as to warrant punitive damages.

WHEREFORE, Plaintiff respectfully requests actual and compensatory damages of $500,000.00, plus costs, interest, and attorneys' fees; and for such other relief that the Court deems just and proper. Plaintiff further prays for punitive damages in the amount of $500,000.00.

11

Dated: New York, New York
July 17, 2017

Respectfully submitted,

**THE LANDAU GROUP, PC**

_____
Kevin A. Landau
45 Rockefeller Plaza, Suite 2000
New York, New York 10111
Phone: 212.537.4025
kevin@thelandaugroup.com

*Attorneys for Monique Zordan*

**JURY DEMAND**

Plaintiff demand a trial by jury, on all issues so triable.

Respectfully submitted,

**THE LANDAU GROUP, PC**

_____
Kevin A. Landau
45 Rockefeller Plaza, Suite 2000
New York, New York 10111
Phone: 212.537.4025
kevin@thelandaugroup.com

*Attorneys for Monique Zordan*

Dated: July 17, 2017

12